IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FAIZ TIWANA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-02887-L** |
| | § | |
| **CHUCK HAGEL, SECRETARY,** | § | |
| **UNITED STATES DEPARTMENT OF** | § | |
| **DEFENSE,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment (Doc. 17), filed December 17, 2012; and the parties' Agreed Motion for Order Staying Case (Doc. 24) pending resolution of Defendant's summary judgment motion, filed April 24, 2013. After carefully reviewing the motion, briefing, appendices, evidence, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment (Doc. 17) and **denies as moot** the parties' Agreed Motion for Order Staying Case (Doc. 24).

## I.      Factual and Procedural Background

Plaintiff Faiz Tiwana ("Tiwana" or "Plaintiff") originally brought this lawsuit on October 26, 2011, against Secretary of Defense Leon E. Panetta ("Panetta"), asserting discrimination, based on national origin, race, and religion, and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*. As Panetta is no longer Secretary of Defense, current Secretary of Defense Chuck Hagel is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d). Tiwana is an Asian American Muslim of Pakistani

national origin.[1]  Tiwana has worked as a Program Systems Analyst in Information Technology with

the Army and Air Force Exchange Service ("AAFES"), an agency of the United States Department

of Defense, at the agency's Dallas, Texas headquarters since 1997.  Tiwana volunteered to be

deployed to Kuwait and was deployed on June 28, 2008.

After Tiwana was deployed to Kuwait, his family moved from the United States to Pakistan.

Tiwana therefore wanted to remain deployed in Kuwait or the Middle East until his retirement to be

close to his family.  Tiwana's deployment was originally scheduled to end sometime before

December 21, 2009; however, Tiwana requested to extend his deployment, and on November 6,

2008, he was granted an extension to December 21, 2009.  Def.'s App. 51, 141.  Tiwana requested

again to further extend his deployment in Kuwait to December 2010, but his request was denied on

July 28, 2009.

On August 27, 2009, Tiwana's contacted  military Equal Employment Opportunity ("EEO")

counselor Tiffany Gist ("Gist"), who was stationed on the same military base in Kuwait.  During this

first meeting with Gist, Tiwana completed a one-page "Information Inquiry Summary," which he

refers to as an informal EEO complaint.  Def.'s App. 143. Tiwana's decision to speak with an EEO

counselor was precipitated by his belief that he had suffered discrimination based on his national

origin and race because his request to further extend his deployment in Kuwait to December 2010

was denied. *See id.*  No details, however, regarding the alleged discrimination were included in the

"Information Inquiry Summary."  *Id.*

On or sometime before September 2, 2009, a decision was made to end Tiwana's deployment

on November 21, 2009, rather than December 21, 2009.  *See* Pl.'s App. 76; Def.'s App. 147 (same).

---

[1] Unless otherwise indicated, the facts set forth in this section are undisputed.

**Memorandum Opinion and Order – Page 2**

According to Tiwana, Gist told him on September 3, 2009, that she had talked to Barbara Travis ("Travis"), the General Manager of the Kuwait Exchange, about the denial of his request to extend his deployment. *Id.* 52.  On September 4, 2009, while talking to Travis about the denial of his request to extend his deployment, Travis informed him that military headquarters in Dallas had made the decision to end his deployment early on November 21, 2009. *Id.* 53.  On September 11, 2009, Tiwana was officially notified via e-mail by Cynthia Horn ("Horn") that his deployment was ending early and he would need to return to Dallas, Texas: "Due to operational needs at HQ IT; you will need to EOT early to help support them.  We will need to EOT you 21 Nov 09.  I've copied Pam Veit so she can help prepare your early EOT in the next few months."  Pl.'s App. 74.  "EOT" refers to "end of tour."  Def.'s Br. 15.

After learning that his deployment in Kuwait would be ending early, Tiwana went to Travis's office on September 13, 2009, and requested to take R&R leave.  Def.'s App. 53.  Travis called Pam Veit ("Veit"), the AAFES Human Resources Manager in Kuwait, into her office to discuss Tiwana's request for R&R leave. *Id.*  Veit told Tiwana that because of his new EOT date, he was no longer eligible for R&R leave but, if Travis approved, he could take vacation leave. *Id.*

On September 15, 2009, Tiwana met with Gist again, contending that he was experiencing ongoing discrimination, as well as retaliation for his EEO activity. *Id.* 53-54.  Tiwana informed Gist that after she talked to Travis, the end of his deployment was changed from January 2010 to November 2009, and his request for R&R leave was denied. *See id.* Tiwana states in his EEO Complaint that Gist "felt insulted that [he] thought her call to Barbara Travis caused retaliation" and "indicated she would give [him] a memo so [he] could contact the AAFES EEO in Dallas" with any further complaints. *Id.*

**Memorandum Opinion and Order – Page 3**

According to Travis, the first time she talked to Gist was on September 15, 2009, when Gist telephoned and informed her that Tiwana had contacted Gist's office regarding his request to extend his deployment and made Gist "feel very uncomfortable by threaten[ing] and accusing her[,] stating that [it] was her fault that he was being treated differently." Def.'s App. 106. According to Travis, Gist therefore "asked [Tiwana] to leave her office and instructed him to contact the AAFES EEO Office." *Id.* Tiwana contends that Travis subsequently called him into her office on September 15, 2009, and threatened to end his employment earlier than November 21, 2009, if he continued to contact Gist rather than the AAFES EEO counselor.

On October 29, 2009, Tiwana filed a formal equal employment opportunity ("EEO") complaint ("EEO Complaint") with the AAFES, alleging employment discrimination based on race, national origin, and religion, and retaliation as a result of his engaging in protected EEO activity. Tiwana's EEO Complaint was accompanied by a detailed chronology of events in 2009 that form the basis of his claims. Tiwana's deployment ultimately ended on November 21, 2009, but before returning to work in Dallas, Texas, he requested and was permitted to take vacation leave. Following a hearing held on January 25, 2011, the Administrative Law Judge ("ALJ") issued a final decision on February 14, 2011, finding no discrimination or retaliation. On July 29, 2011, the ALJ's decision was affirmed by the Equal Opportunity Employment Commission ("EEOC").

Defendant has moved for summary judgment on Plaintiff's discrimination and retaliation claims. No details regarding Tiwana's discrimination and retaliation claims are set forth in his Complaint; however, he explains the basis for his claims in his response to Defendant's summary judgment motion. The court therefore limits its discussion in this opinion to addressing Tiwana's

claims as described in his response.[2]  With regard to his discrimination claim, Tiwana contends that:

(1) in March 2009, his foreign post differential pay was wrongfully canceled temporarily; and (2)

on June 3, 2009, his request for vacation leave was wrongfully denied.  With regard to his retaliation

claim, Tiwana contends that on July 28, 2009, his request to extend his deployment until December

2010 was wrongfully denied in retaliation for requesting vacation leave, requesting to live off base,

and seeking reconsideration, on July 31, 2009, of such denials.  Tiwana further asserts that

Defendant retaliated against him for his engaging in EEO activity by: (1) ending his deployment

early on November 21, 2009, rather than January 2010; (2) denying his September 13, 2009 request

for rest and relaxation ("R&R") leave; (3) threatening to end his deployment earlier than November

2009 if he continued to contact the military EEO counselor Gist rather than the AAFES EEO

counselor.

## II.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas*

*Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary

---

[2] Apparently, Defendant was uncertain as to the actual basis of Tiwana's discrimination and retaliation claims and presumably, out of an abundance of caution, addressed all potential bases for Tiwnan's claims in its summary judgment motion.  Because Tiwana's response to the summary judgment sets forth the specific bases for his claims and does not include all of the matters addressed by Defendant, the court concludes that Tiwana only intends to assert claims in this case based on the matters in his response, and any potential claims regarding matters not addressed in his response are waived.  Tiwana's characterization of his claims, as set forth in his response, therefore, defines the parameters of the court's discussion in addressing his claims.

judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of

evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Title VII Discrimination Claim

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As Tiwana offers only circumstantial evidence of discrimination, his Title VII claims are analyzed using the modified *McDonnell Douglas* burden-shifting paradigm. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). To survive a motion for summary judgment under the modified *McDonnell Douglas* paradigm, a Title VII plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of discrimination, a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Lee v. Kansas City S. Ry. Co.*, 574

F.3d 253, 259 (5th Cir. 2009) (addressing racial discrimination claim).  Once this *prima facie* case

has been established, there is a presumption of discrimination, and the burden shifts to the defendant

to articulate some legitimate, nondiscriminatory reason for the challenged employment action.

*McDonnell Douglas,* 411 U.S. at 802-04.  If such a showing is made, the burden shifts back to the

plaintiff to demonstrate that the articulated reason was merely a pretext for intentional

discrimination.  *Id.*

Defendant contends that Tiwana cannot establish a prima facie case of discrimination

because: (1) no adverse employment action occurred; (2) Tiwana was not treated less favorably than

others similarly situated; and (3) and Defendant had a legitimate nondiscriminatory business reason

for its decisions.

### A.       Temporary Suspension of Foreign Post Differential Pay

With regard to Tiwana's foreign post differential ("FPD") pay claim, Defendant asserts and

Plaintiff does not dispute that:

> Foreign post differential is a monetary entitlement that deployed AAFES
> employees receive. (Appendix, p. 78.)  According to a statement of understanding
> that Tiwana signed before he deployed to Kuwait, deployed employees begin to
> receive foreign post differential on their 43rd day in the country of deployment.
> (Appendix, pp. 86, 88.) Foreign post differential "is stopped if [an employee] leave[s]
> country for any vacation/sick leave other than the scheduled 10 day R&R
> [rest-and-relaxation administrative leave] plus travel time during the deployment."
> (Appendix, p. 86.) The statement of understanding further states that deployed
> employees would "have to wait another 43 days after returning into the country for
> the FPD to start again." (Appendix, p. 86.)

Def.'s Br. 2.  The parties also acknowledge that, after Tiwana took preapproved R&R leave in

February 2009, his FPD pay was temporarily suspended.  Defendant contends, and Tiwana appears

to agree, that Tiwana's FPD pay was temporarily suspended because Veit mistakenly believed that he was gone for more than 15 days.

Defendant contends that Tiwana suffered no adverse employment action because he admits that his FPD pay was reinstated and he suffered no financial loss.  Def.'s Br. 2; Def.'s App. 63. Defendant further asserts that there is no evidence Tiwana was treated differently from other employees, and it had a legitimate business reason for canceling Tiwana's FPD pay in accordance with FPD policy because it mistakenly believed that Tiwana had been out of the country beyond the allowed time frame, and corrected the error after it was brought to its attention.

Tiwana asserts in his response that he was nevertheless discriminated against based on his race, national origin, or religion because the mistake "was not corrected until April 17, 2009 almost two months after his FPD had been wrongfully discontinued,"  Pl.'s Resp. 7, and he had to speak with three or four persons in Human Resources before the error was corrected.  Defendant replies that Tiwana has failed to come forward with evidence that he was treated less favorably or differently from other similarly situated employees.

According to a declaration by Tiwana, his FPD pay was stopped on March 20, 2009.  Def.'s App. 62.  After discussing the issue with persons in Human Resources between March 26, 2009, and April 10, 2009, his FPD pay was reinstated on April 17, 2009.  *Id.*  Thus, Tiwana's contention that his FPD pay was not reinstated for "almost two months" after it was suspended is misleading. Moreover, as Defendant correctly notes, Tiwana has presented no evidence that he was treated less favorably because of his membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee*, 574 F.3d at 259. Tiwana's allegations regarding discrimination constitute speculation on his part that

is unsupported by any evidence in the record.  Tiwana has therefore failed to meet his burden of establishing a prima facie case of discrimination and raise a genuine dispute of material fact with regard to his FPD pay claim. Accordingly, Defendant is entitled to judgment as a matter of law on Tiwana's discrimination claim based on FPD pay.

### B.       Denial of June 2009 Vacation Request

Defendant contends that Tiwana's discrimination claim based on the denial of his request to take vacation leave from June 8, 2009, to June 12, 2009, fails because: (1) no adverse employment action occurred; (2) Tiwana was not treated less favorably than others similarly situated; and (3) Defendant had a legitimate nondiscriminatory business reason for denying the request based on the agency's new policy for vacation leave.

### 1.       Adverse Employment Action

In response to Defendant's contention that the denial of his June 2009 vacation request is not an adverse employment action, Tiwana states in conclusory fashion that he "clearly suffered an adverse employment action [] when Travis denied his vacation leave that had been previously approved by his first line and second line managers."  Pl.'s Resp. 31.

The court determines that Defendant's denial of his June 2009 request for vacation does not qualify as an adverse employment action. While denying an employee leave can constitute an adverse employment action,[3] "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general." *Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (citation omitted) (in the

---

[3] *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 521-22 (5th Cir. 2001) (concluding that the denial of a requested six-month leave qualified as an adverse employment action).

context of retaliation).[4]  The court therefore concludes that Defendant's denial of Tiwana's request to take vacation leave from June 8, 2009, to June 12, 2009, does not rise to the level of an adverse employment action.

## 2.     Similarly Situated

Tiwana contends that Travis, Veit, Carol Walker ("Walker"), other similarly situated unnamed AAFES employees, and "many other Associates" were permitted to take vacation leave or were granted extensions and transferred to positions and locations they requested.  Although not referred to in his response, Tiwana also cites to his declaration in which he states that Lavdim Vranovci ("Vranovci") was permitted to take leave due to family needs.  Def.'s App. 66-67. Defendant counters that Tiwana has presented no evidence to support his assertion that any of the referenced persons were similarly situated.

Tiwana's conclusory statement that he was treated less favorably than other unnamed similarly situated persons is insufficient to carry his burden.  Moreover, it is undisputed that Tiwana was a computer or Program Systems Analyst in Information Technology, and he acknowledges in his response to Defendant's summary judgment that Veit worked in Human Resources and Travis was the AAFES General Manager in Kuwait.  He presents nothing in the way of argument or evidence to show that either Vranovci or Walker was similarly situated.  Thus, Tiwana cannot establish a prima facie case because he has not established that the denial of his vacation request was an adverse employment action, and he has presented no evidence that establishes that he was treated

---

[4] Although this quote from *Ogden* pertained to the plaintiff's retaliation claim in that case, it applies with equal force in the discrimination context since the standard in retaliation cases as to whether there has been an adverse employment action is less stringent than that needed to establish a prima facie case of discrimination.  *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

less favorably because of his membership in a protected class than other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  Tiwana has therefore failed to raise a genuine dispute of material fact as to his discrimination claim based on the denial of his request for vacation leave in June 2009, and Defendant is entitled to judgment as a matter of law on this claim.  Accordingly, the court need not address Defendants' other grounds for summary judgment as to this claim.

## IV.    Title VII Retaliation Claim

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor,* 276 F.3d

at 692.  This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557.  Once a defendant asserts such a reason, the inference of discrimination or retaliation raised by the *prima facie* showing drops from the case.  *Montemayor,* 276 F.3d at 692. At this point, summary judgment is appropriate unless the plaintiff can prove that the defendant's rationale is pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973).

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted).  In so ruling, the Court rejected Fifth Circuit authority, *id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)).  In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse."  *Id.* at 68.

In *Smith v. Xerox Corporation*, the Fifth Circuit recognized that mixed-motive retaliation claims are cognizable under section 2000e-3(a) of Title VII,[5] and that a plaintiff is not required to present direct evidence of retaliation in order to obtain a mixed-motive jury instruction. *Smith v. Xerox Corp.*, 602 F.3d 320, 330-32 (5th Cir. 2010). Instead, a plaintiff may proceed under a mixed-motive theory using either direct or circumstantial evidence. *Id.* at 332. To proceed under a mixed-motive theory, however, the plaintiff must present "substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action." *Id.* at 333-34.

To defeat a motion for summary judgment under a pretext alternative, a plaintiff "must demonstrate a conflict in substantial evidence on [the] ultimate issue of but for causation." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir.), *cert. denied by Ketterer v. Yellow Transp., Inc.*, 133 S.Ct. 136 (2012) (quoting *Long*, 88 F.3d at 308) (internal quotation marks omitted). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 658 (internal quotation marks omitted). "[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 418 n.9 (5th Cir. 2003) (citing *Shackelford v. DeLoitte & Touche, LLP,* 190 F.3d 398, 409 (5th Cir. 1999)).

---

[5] As noted by the Fifth Circuit in *Carter v. Luminant Power Services Company*, No. 12-10642, — F.3d — , 2013 WL 1563659, at *4 n.34 (5th Cir. Apr. 15, 2013), "[t]he Supreme Court will soon hear argument concerning whether mixed-motive retaliation claims are cognizable under § 2000e–3(a)." *Id.* (citing *University of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 978 (2013)). Those arguments have now taken place in the Supreme Court. As herein explained, Tiwana cannot meet either a pretext or mixed-motive standard. Accordingly, any ruling by the Supreme Court on this issue will not affect the court's determination that Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

Evidence of temporal proximity between the protected act and the adverse employment action alone, however, is insufficient to create a genuine dispute of material fact regarding "but for" causation. *Strong v. University Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

**A.     July 28, 2009 Denial of Request to Extend Deployment to December 2010**

Tiwana contends that his request to extend his deployment until December 2010 was wrongfully denied on July 28, 2009, in retaliation for his requesting vacation leave, requesting to live off base, and seeking reconsideration, on July 31, 2009, of such denials.  Defendant contends that Tiwana cannot establish a prima facie case of retaliation because the denial of his request to extend his deployment to December 2010 is not an adverse employment action.  Defendant further asserts that Tiwana's deployment had already been extended more than one year once before from July 28, 2009, to December 21, 2009, and his request to further extend his deployment to December 2010 was denied because of his performance and because Tiwana's and the positions of many others in Kuwait were being eliminated.

Defendant further contends, and the court agrees, that Tiwana's claim as to the denial of his request to extend deployment to December 2010 is not based on his taking part in any protected activity or opposing an unlawful employment practice under Title VII.  Specifically, requesting vacation leave, requesting to live off base, and seeking reconsideration of the denials of his requests do not qualify as protected activity or opposing an unlawful employment practice under Title VII. There is also no evidence that Tiwana, in requesting vacation leave, requesting to live off base, and seeking reconsideration of the denials of his requests, reasonably believed he was opposing conduct that violated Title VII.  *Long*, 88 F.3d at 305.  Additionally, the denial of his request to extend his deployment could not have been motivated or done in retaliation for Tiwana's July 31, 2009 request

for reconsideration because it occurred *after* Defendant denied his request to extend his deployment.

Tiwana has therefore failed to meet his burden of establishing a prima facie case of retaliation claim

based on the denial of his request to extend deployment to December 2010. Accordingly, Defendant

is entitled to judgment as a matter of law, and the court need not address Defendant's other summary

judgment grounds as to this claim.

### B.     Denial of September 13, 2009 Request for Rest and Relaxation Leave

It is undisputed that on September 13, 2009, immediately after learning that his deployment

in Kuwait would be ending early on November 21, 2009, and he would be returning to Dallas, Texas,

Tiwana approached Travis and Veit to request R&R leave, and Veit advised him that he was not

entitled to take R&R leave because his deployment was ending early on November 29, 2009.

Defendant appears to acknowledge that the denial of R&R leave constitutes an adverse

employment action but nevertheless contends that Tiwana cannot establish a prima facie case of

retaliation because there is no causal link between his EEO activity and the denial of his request for

R&R leave. Defendant asserts, "Rather than retaliating against Tiwana, AAFES instead granted

[him] vacation leave in December 2009, after he filed his EEO complaint, and continued to employ

him." Def.'s Br. 15-16. Defendant also contends temporal proximity alone is insufficient to

establish causation. Defendant further asserts that it has presented a legitimate business reason for

denying Tiwana's request for R&R leave in September 2009, that is, that Tiwana was not entitled

to the requested leave under the policy for R&R leave that was included in the Statement of

Understanding he signed on June 4, 2008, which states:

> **Rest & Relaxation (R&R) Administrative leave**: period of 10 calendar days to
> home duty destination. Each 180 tour is authorized 1 R&R trip. Associates are
> authorized R&R's per the chart below:

180 day tour    1 R&R at 90 days
360 day tour    1 R&R at 90 days (halfway through the first 180 days)
                      1 R&R at 270 days (halfway through the second 180 day tour)

This cycle repeats for an additional approved 180 or 360 day tour.  I understand that
no R&R is authorized for less than a 180 day deployment tour.

Def.'s App. 88.

Defendant also presented evidence that after Veit advised Tiwana on September 13, 2009,

that he was not entitled to take R&R leave, she followed up with an e-mail to Tiwana on October

15, 2009.  Def.'s App. 139.  In her e-mail, Veit let Tiwana know that she spoke with the Human

Resources manager for the European region, John Seward ("Seward"), about his request for R&R

leave, and Seward confirmed that Tiwana was not authorized to take R&R leave because he would

not be completing a 180-day tour of duty; however, he would be entitled to vacation leave or "VL"

if he wanted to take it.  Seward and other persons were copied on Veit's e-mail.  Tiwana responded

to Veit's e-mail two hours later and copied Seward and others on the e-mail, stating:

Based on my departure date of June 20, 2009 from my home duty station of
AAFES HQ Dallas TX and my new early EOT date of November 21, 2009, my total
tour of duty in Kuwait/Down Range will be a continuous of 17 months without a
break, it is a total of 519 days tour.  I think I am entitled for a 3rd R&R after the
completion of first 90 days into my second year which should have been around
middle of September 2009 or so.

My son['s] wedding has been delayed so I will stay and work in Kuwait till
my new early EOT date of November 21, 2009.  I would like to travel to Pakistan at
my EOT and would like to go to Dallas directly from Pakistan to save travel time if
it will be possible.  At this time I am thinking to report to duty at AAFES HQ Dallas
on Monday December 21, 2009.  Please advise how and where I will submit my
vacation leave request after my early EOT date of November 21, 2009.

Id. 138-39.  On November 2, 2009, Seward responded to Tiwana's e-mail as follows:

Faiz,

Please forgive the delayed response, I've been in and out of the office for the past few weeks due to an emergency. In any event, I've reviewed the traffic concerning your situation and wish to clear up a few points.

You deployed on 28 Jun '08 and based on the Deployment SOU you signed, you are entitled to 1 R&R per 6 month tour or 2 R&Rs per 1-year tour. Our records indicate that you took your 1st R&R in Oct '08 and your 2nd in Feb/Mar '09. In addition, due to some special circumstances, you were granted 26 days of Admin/VL on top of these two R&Rs (usually not allowed during one's first year of deployment). These extra Admin/VL days have to be added on to your tour; as such, your adjusted one year mark was o/a 19 Jul '09. Based on your adjusted one year mark, in order to qualify for another R&R, you would have to remain deployed until 15 Jan 2010; the R&R policy states: "I understand that no R&R is authorized for less than a 180-day deployment tour . . ." [] As you are leaving in Nov, no additional R&R can be granted.

That said, we (HR) have no issues with you taking some vacation days in Pakistan at the end of your tour. Your immediate supervisor must, however, approve the VL (please submit a slip). While we are okay with a constructive EOT, we request that you return to Kuwait at the conclusion of your VL and officially depart Contingency via the Freedom Bird (just as all other CONUS-based associates must do).

*Id.* 138.

In his response to Defendant's summary judgment, Tiwana asserts:

**ISSUE: No. 5: Whether Plaintiff's September 13, 2009 request for Rest and Relaxation was denied in reprisal for participating in a protected EEO activity.**

Tiwana received his early return orders on September 12, 2009, upon receiving his orders he went to speak with Travis about taking his last R&R. (Pg. 233 Lines 19-23) At that time the last R&R he had taken was in February of 2009, since Travis denied his [vacation] request in June of 2009. (Pg. 233 Lines 23-25) Travis called Veit and had her come to her office and speak with Tiwana regarding his R&R. Veit informed Tiwana that since his leave [deployment] would be ending early he would not be eligible for R&R and would not be given his bonus. (Pg. 234 Lines 3-9) This is clearly an act of reprisal.

**Memorandum Opinion and Order – Page 18**

Pl.'s Resp. 34.  This excerpt from Tiwana's response is the only argument he makes in support of his retaliation claim based on the denial of his R&R leave and filing of his EEOC Complaint. Although he asserts here that he received his early return order on September 12, 2009, the evidence he relies on in response to Defendant's summary judgment motion shows that he was actually notified via e-mail on September 11, 2009, that his deployment would be ending one month early. Pl.'s App. 74.  The court further notes that the pages cited in the aforementioned excerpt by Tiwana do not correspond to either his or Defendant's appendices and instead appear to refer to pages 233 through 234 of the January 25, 2011 EEOC hearing transcript, which contains testimony by a number of persons.  *See* Pl.'s App. 60-61.  Based on the testimony included in the specific pages cited by Tiwana, it further appears that the testimony referred to is his own.  *Id.*  On the pages cited, Tiwana testified that on September 13, 2009, after receiving his early return orders, he spoke with Travis and Veit and requested to take R&R leave but was told by Veit that he was not eligible for R&R leave because his tour was less than 180 days.  Even viewing this evidence in the light most favorable to Tiwana, the court determines that it does not raise a genuine dispute of material fact as to whether Veit or Seward denied his request for R&R leave in retaliation for his EEO activity.  At most, it shows only that his third request for R&R leave was denied for policy reasons.  Thus, the evidence is insufficient to establish that Defendant's proffered business reason was a pretext for retaliation or that an illegitimate motive played a role in the decision to deny Tiwana's request for R&R leave.

Additionally, the court agrees with Defendant that evidence of temporal proximity alone between the protected act (Tiwana's filing an informal EEO complaint on August 27, 2009) and the alleged adverse employment action (the denial of Tiwana's request for R&R leave on September 13, 2009) is insufficient to create a genuine dispute of material fact regarding "but for" causation,

*Strong*, 482 F.3d at 808, or retaliation based on a mixed-motive theory. *See Xerox*, 602 F.3d at 333-34 (requiring "substantial evidence" of mixed-motive "supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action").

Moreover, while there is some evidence Travis learned on September 3, 2009, that Tiwana had contacted military EEO counselor Gist, there is no evidence that Veit or Seward, the persons who denied his request for R&R were aware, prior to September 13, 2009, of Tiwana's EEO activity. Veit testified at the EEOC hearing that she learned sometime in "September 2009 time frame" that Tiwana felt he was being discriminated against and was considering filing an EEO complaint; however, this does not establish that she was aware of Tiwana's EEO activity at or before the time she told him on September 13, 2009, that he was not eligible to take further R&R leave. Pl.'s App. 35. Even assuming that Veit learned of Tiwana's EEO activity from Travis, who apparently worked in the same office, such evidence would be insufficient to defeat Defendant's summary judgment motion.

"The combination of temporal proximity and knowledge of a protected activity may be sufficient to satisfy a plaintiff's prima facie burden for a retaliation claim." *Cothran v. Potter*, 398 F. App'x 71, 73-74 (5th Cir. 2010) (citing *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005), and *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). Even if Tiwana could establish a prima facie case of retaliation, his retaliation claim fails because he has not demonstrated pretext or mixed-motive. Defendant offered a legitimate, nonretaliatory reason for the denial of Tiwana's request for R&R leave, that is, that Tiwana was not eligible for further R&R leave because his deployment in Kuwait was ending early on November 21, 2009. As discussed

herein in more detail, Defendant also presented evidence that the decision to end his deployment early was made by Human Resources or military headquarters in Dallas, Texas, on or about September 2, 2009, and no one in Kuwait had any involvement in that decision.  Tiwana presents no competent summary judgment evidence to rebut this evidence.  Also, there is no evidence that anyone in the Dallas office was aware of Tiwana's EEO activity, and thus the temporal proximity between the decision to end his deployment early, which in turn gave rise to the denial of his request for R&R leave, and his EEO activity was coincidental.  Tiwana's bare assertion that he was denied R&R leave in retaliation for his EEO activity is nothing more than mere speculation, is insufficient to show that Veit's or Seward's explanations are false or motived by an improper motive, and does not raise a genuine dispute of material fact as to pretext.  *Cothran*, 398 F. App'x at 73-74.

Tiwana also appears to contend that his deployment was ended early to deprive him of his entitlement to take a third R&R leave.  His contention in this regard, however, is not supported by the record.  Tiwana refers generally in his response to his "EOT date" as originally being "January 2010," although he acknowledges in other sections of his response that his extended deployment was scheduled to end December 21, 2009.  Tiwana's contention that his original EOT date was January 2010, appears to based on his belief that, although his approved extended EOT date was December 21, 2009,[6] his actual EOT date was January 4, 2010, counting his vacation leave days.  Def.'s App. 70.  According to Seward's calculation, however, for Tiwana to qualify for a third R&R leave, he would have to remain deployed in Kuwait until January 15, 2010, because he was permitted to the 26 days of "extra Admin/VL" leave.  *Id.* 138.  Tiwana does not dispute that he was allowed to take

---

[6] As previously noted, Tiwana's original EOT date was sometime before December 21, 2009. Tiwana requested an extension of his original EOT date, and on November 6, 2008, was granted an extension to December 21, 2009. Def.'s App. 51, 141.

**Memorandum Opinion and Order – Page 21**

26 days of "extra Admin/VL" leave; nor does Tiwana dispute Seward's determination that he would have to remain deployed until January 15, 2010, to qualify for additional R&R leave. Thus, even if Tiwana had remained deployed in Kuwait until January 4, 2010, the date he contends was his original EOT date, he still would not have qualified for the requested R&R leave. Accordingly, Tiwana has failed to raise a genuine dispute of material fact as to whether Veit's and Seward's explanations are false or that their decision to deny his R&R leave request was motived by an improper motive. Defendant is therefore entitled to judgment as a matter of law on this claim.

### C.     Decision to End Plaintiff's Deployment Early

Plaintiff contends that he was notified on September 12, 2009, that his deployment would be ending early on November 21, 2009, instead of January 2010, and that his deployment was ended early in retaliation for his participating in protected EEO activity. Pl.'s Resp. 15.

Defendant does not dispute that Tiwana engaged in protected activity in contacting EEO and filing an EEO Complaint; however, Defendant contends that Tiwana cannot establish a prima facie case of retaliation because ending Tiwana's deployment one month earlier than scheduled is not an adverse employment action. Def.'s Br. 14 (citing *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 396 (5th Cir. 2008) (denial of lateral transfer); and *Smith v. Secretary of Army*, No. 1:11-CV-724, 2012 WL 3866487, at *5 (E.D. Va. Sept. 5, 2012) (denial of request to extend deployment)). Defendants contend that even assuming that ending Tiwana's deployment one month early qualifies as an adverse employment action, he cannot establish that there is a causal link between Tiwana contacting the EEO military counselor and the decision to end his deployment early. Further, Defendant contends that Tiwana's subjective belief, without more, that the early end of his deployment was retaliatory is insufficient. *Id.* 14-15 (citing *Haley v. Alliance Compressor LLC*, 391

F.3d 644, 651 (5th Cir. 2004)).   As to the timing of the decision, Defendant contends that the temporal proximity between the events is merely coincidental because the agency had already showed signs of not needing Tiwana in Kuwait one month before he contacted an EEO counselor.

Defendant further asserts that the decision to end Tiwana's deployment early was based on operational needs in Dallas, Texas, and points to the ALJ's determination that "[t]here was no evidence . . . that anyone in Kuwait was responsible for the early EOT [end of tour] which was directed by AAFES Headquarters in Dallas." Def.'s Br. 15.  Defendant also relies on a declaration by Horn, who states that AAFES employees are advised during training that an "assignment is always subject to change due to operational needs" and she had no reason to believe that the decision to return Tiwana to the United States earlier than planned was handled any differently than the overseas deployments of other associates.  *Id.* (citing Def.'s App. 149-50).

Tiwana counters that he has presented a prima facie case of retaliation and that Defendant's alleged reason for ending his deployment early, based on "operational needs," was manufactured in response to his continued complaints regarding Defendant's discrimination.   In support of his contention that Defendant's proffered business reason is a pretext, Tiwana contends that no one has ever explained to him why his deployment was ended early.  Tiwana also presented evidence that after being officially notified on September 11, 2009, that his deployment would be ending early, he contacted two of his immediate supervisors in Dallas and asked them if they knew why his deployment was ending early and neither were aware of the decision to have Tiwana return to Dallas early or the reason for the decision.  Because he did not return to work in the Dallas office until early January 2010, Tiwana also contends that, contrary to Defendant's assertion, he was not actually needed in Dallas before his originally scheduled time to leave Kuwait.

**Memorandum Opinion and Order – Page 23**

In addition, Tiwana points to evidence that Travis was aware that he had spoken to military EEO counselor Gist "prior to the end of [his] accelerated end of tour." Pl.'s Resp. 15. In an attempt to establish a causal connection between his EEO activity and the decision to end his deployment early, Tiwana maintains that Travis informed him that his deployment would be ending the day after he visited military EEO counselor Gist and was instructed during a meeting with Travis and Veit that he should contact AAFES's EEO counselor rather than Gist. Pl.'s Resp. 16-17. According to Tiwana, Travis threatened to end his deployment before November 21, 2009, if he continued to bother Gist because she had voiced concerns about his attitude and no longer felt comfortable dealing with him.

Defendant replies that Tiwana's immediate supervisors were not aware of the decision to end his deployment early because it was made at the level of AAFES Human Resources and contingency operations specialists in Dallas, Texas, not at the level of Tiwana's immediate supervisors. Defendant further asserts that Tiwana's return to work in the Dallas office in early January is not evidence of pretext because his late return was due to his own request to take vacation leave in December 2009, not because there was no work for him in Dallas.

There is little, if any, case law on the issue of whether the denial of a request to extend deployment or the decision to end deployment early constitutes an adverse employment action for purposes of a Title VII retaliation claim. Tiwana contends that as a result of his early deployment, he was no longer eligible for R&R leave or a bonus. Assuming, without deciding, that the early termination of Tiwana's deployment constitutes an adverse employment decision, his retaliation claim still fails. Although it is not clear from his response to Defendant's summary judgment

motion, Tiwana appears to contend that Travis or Veit made the decision to end his deployment early.  *See* Def.'s App. 69.  There is no evidence, however, other than Tiwana's subjective belief, that Travis had any involvement in the decision or was aware that he had contacted the EEO counselor before September 2, 2009, the date that the decision to end his deployment early was first communicated.  *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) ("[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity. . . . If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.") (internal citations and quotation marks omitted).

The first time Tiwana contacted an EEO military counselor and filed an informal complaint was August 27, 2009.  Def.'s App. 143.  According to Tiwana's October 29, 2009 EEO Complaint and a June 24, 2010 declaration he submitted in response to a questionnaire by Defendant, he also contacted EEO counselor Gist on September 3, 2009, about perceived discrimination, based on his religion and national origin, because his request to extend his deployment to December 2010 was denied.  *Id.* 52, 143.  In his declaration, Tiwana  states that on September 3, 2009, Gist informed Travis that he had contacted the military EEO, and on September 4, 2009,[7] while discussing with Travis the denial of his request to extend his deployment, Travis informed him that his deployment would be ending earlier than anticipated.  Def.'s App. 44, 69.  According to Tiwana, this was the first time he learned unofficially that his deployment would be ending early.

_____

[7] Aside from Tiwana's declaration, there is no other evidence that Gist telephoned Travis on September 3, 2009, and advised her of Tiwana's EEO activity.

**Memorandum Opinion and Order – Page 25**

It is undisputed, however, that the decision to end Tiwana's deployment early was made before he met with Gist on September 3, 2009, and before Gist informed Travis of Tiwana's EEO activity. The record, including evidence submitted by Plaintiff, shows that on September 2, 2009, Dallas AAFES Human Resources Career Manager Lisa K. Christie ("Christie") e-mailed Horn, an AAFES Human Resources Contingency Operations Specialist in Dallas headquarters, and asked her to notify Tiwana that "due to operational reasons we will need to proceed with bringing him back from deployment in three months (on/about end of Nov)."[8] Pl.'s App. 76; Def.'s App. 147 (same). The following day, Horn e-mailed Veit and Lage, explaining: "Due to operational needs Tiwana Faiz will need to EOT early (on/about end of Nov 09). I will send Tiwana an email but wanted to notify the two of you first." Pl.'s App. 75 Def.'s App. 146 (same). According to Travis's EEOC hearing testimony, she first learned of the decision to end Tiwana's deployment early from Veit. Travis also testified that she did not make the decision to end his deployment early and did not have any communications with "headquarters" in Dallas about the decision. Def.'s App. 9-10; Pl.'s App. 6-7 (same). Veit similarly testified that she learned about the decision from Horn's September 3, 2009 e-mail, and there is also no evidence that Veit had any involvement in the decision. *See id.* 25.

Thus, there is no evidence that Travis, Veit, or anyone in Kuwait, knew of the decision prior to September 3, 2009. As a result, they could not have been involved in the decision to end Tiwana's deployment early, which was made on or before September 2, 2009, and Tiwana's subjective belief to the contrary is insufficient to raise a genuine dispute of material fact. Tiwana's reliance on the confrontational meeting with Travis and Veit where he was told that his deployment

---

[8] Two other persons, Gary W. Burton and Starr D. Comstock, were copied on Christie's September 2, 2009 e-mail, but it is unclear who these persons are and whether they played any role in the decision to end Tiwana's deployment early.

would be ended earlier than November 21, 2009, if he continued to contact Gist rather than the

AAFES EEO counselor is misplaced and does not establish the requisite causal link. According to

Tiwana's EEO Complaint and declaration, this meeting and his meeting with Gist occurred on

September 15, 2009, thirteen days after the decision to end his deployment early was first announced.

Def.'s App. 53, 58.

More importantly, Tiwana has failed to come forward with any evidence to establish that

Travis, Veit, or anyone in Kuwait was aware that he had engaged in protected activity prior to

September 2, 2009.   Accordingly, neither Travis nor Veit (nor anyone in Kuwait) could have

retaliated against Tiwana based on his engaging in protected conduct.   *Manning*, 332 F.3d at 883.

Tiwana has therefore failed to establish the causation prong of his retaliation claim, and Defendant

is entitled judgment as a matter of law on this claim.   *Id.*

### D.    Threat to End Deployment Earlier than November 2009

Tiwana contends that Travis threatened to end his deployment earlier than November 21,

2009, if he continued to contact military command EEO counselor Gist rather than the AAFES EEO

counselor.   Tiwana asserts that although Defendant has taken the position that his contact with Gist

was inappropriate, Travis never mentioned this during their meeting.   Tiwana contends that Travis's

"tirade" and her demeanor and behavior during this meeting were "uncalled for."   Pl.'s Resp. 35.

According to Tiwana, "[t]his is retaliation as a matter of law."   Tiwana further asserts:

> Complainant[] goes to see Gist about filing an EEO complaint and is subsequently
> called into Travis' office and told if he speaks with the EEO counselor on base again
> she is going to terminate his tour early. Gist was the only EEO Counselor on the base.
> The Kuwait base did not have an AAFES EEO Counselor on-site; there was no one
> else for Tiwana to speak with regarding his claims of retaliation. Tiwana was

> complying with the directive that had been issued by AAFES when he went to speak
> with Gist about the retaliation.

*Id.*

Defendant contends that Tiwana admits that his supervisors encouraged him to contact the AAFES's EEO counsel, and that any threat to end his deployment early if he continued contacting the military's EEO counselor (Gist) rather than the AAFES EEO counselor is not an adverse employment action.  The court agrees.

Even taken in a light most favorable to Tiwana, his allegations regarding Travis's confrontational conduct and threat to end his deployment sooner than November 21, 2009, do not constitute actionable adverse employment actions as discrimination or retaliation. *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2053 (2009) (citing and quoting *Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 68; and *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (holding that criticism, oral threats, abusive remarks, and threats of termination did not rise to the level of adverse employment action)).  Furthermore, Tiwana acknowledges that he was undeterred by Travis's threats because one month later he filed an EEO Complaint alleging discrimination and retaliation, and there is no evidence that the alleged threats affected his employment status. *Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454, 458-59 (5th Cir. 2010) (per curiam).  Thus, Tiwana has failed to show that he suffered from an adverse employment action and therefore has not articulated a prima facie case of retaliation.  Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

V.       **Conclusion**

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists regarding Plaintiff's claims for unlawful discrimination and retaliation under Title VII. Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 17) and **dismisses with prejudice** Plaintiff's claims.  The court **denies as moot** the parties' Agreed Motion for Order Staying Case (Doc. 24).  Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 2nd day of May, 2013.


Sam A. Lindsay
United States District Judge